IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. AP-76,244






EX PARTE BENJAMINE JOHN SPENCER, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. W87-96524-T(A) FROM THE


283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY





 Price, J., filed a concurring opinion in which Hervey and Cochran, JJ., joined.


CONCURRING OPINION



 I join the Court's opinion. This case has drawn a great deal of curious attention. I
write separately to emphasize why it is appropriate for this Court to exercise its duty and
prerogative, as the ultimate factfinder in post-conviction habeas corpus matters, (1) to take
whatever time is necessary on an extensive record to carefully consider and resolve a claim
such as this. (2) It is especially fitting that we should not rush to judgment in view of the
opposition of the district attorney's office, an office that has a current reputation for not
reflexively opposing post-conviction claims of actual innocence--indeed, for actively
facilitating the investigation of such claims as are at least facially plausible. (3)

 Habeas corpus is an extraordinary remedy. Any grant of post-conviction habeas
corpus relief flies in the face of the State's compelling interest in the finality of its hard-won
conviction. Claims of actual innocence threaten the State's finality interest even more than
most because, though the remedy is a new trial, it is rare that the State can successfully retry
such a case if habeas relief is granted. Texas is one of the few jurisdictions so far to
recognize actual innocence as a cognizable due process claim in post-conviction habeas
corpus proceedings. (4) Believing that the societal interest in accurate results in criminal trials
should invariably trump the State's otherwise legitimate interest in the finality of its
convictions, I have always concluded that we are right to recognize actual innocence claims
in post-conviction habeas corpus proceedings. But we are also right, in deference to the
State's otherwise legitimate interest in finality of its convictions, to insist that establishing
a bare claim of actual innocence should be "a Herculean task." (5)

 Accordingly, when we first recognized bare actual innocence as a cognizable, stand-alone claim in post-conviction habeas corpus proceedings, we deliberately designed the
standard to be exceedingly rigorous. In Ex parte Elizondo, we held that, to succeed in such
a claim, an applicant must produce new evidence to demonstrate that he is "unquestionably
innocent"; that is to say, the reviewing court must be able to conclude, after factoring the
new, exculpatory evidence in with the inculpatory evidence introduced at trial, that the
applicant has shown "by clear and convincing evidence that no reasonable juror would have
convicted him in light of the new evidence." (6) In Ex parte Franklin, we elaborated that a
claim of actual innocence requires applicants to produce evidence "that proves [their]
innocence and not merely raises doubt about their guilt[.]" (7) Only after the applicant has
produced such "affirmative evidence of [his] innocence" need the determination then be
made whether, by clear and convincing evidence, weighing both the new and the old, no
rational jury would have convicted him. (8)

 We typically see two types of evidence of actual innocence that might, under the right
circumstances, qualify as "affirmative evidence of innocence." First, if an offender leaves
biological material such as blood or semen behind, and the circumstances show that he acted
alone in perpetrating the offense, post-conviction DNA testing may constitute affirmative
evidence of an applicant's innocence if it reveals that the biological material was not his. 
Second, if the victim of an offense recants his trial testimony that an applicant assaulted him,
there is no other evidence that an assault even occurred (or at least that the applicant was the
perpetrator), and the recantation is deemed more credible under the circumstances than the
trial testimony, then the recantation may count as affirmative evidence of innocence. 
(Indeed, under this second scenario, it may become evident that no offense even occurred!) 
The Court correctly concludes today that, in the instant case, there is no comparable
"affirmative" evidence of innocence; there is only evidence that could serve, however
convincingly, to cast doubt upon the credibility of the State's evidence of the applicant's
guilt. Such a threshold showing does not serve to outweigh the State's interest in the finality
of its conviction.

 The applicant's actual innocence claim, as I understand it, is predicated on essentially
three prongs. First, the jailhouse snitch who testified that the applicant confessed to him has
since recanted. (9) Second, other informants have come forward with statements that another
perpetrator admitted to an offense that has certain characteristics remarkably similar to the
instant murder. And third, a forensic optometrist has now proclaimed that what the State's
eyewitnesses claim to have seen on the night of the offense is beyond the realm of human
visual acuity. None of this evidence (assuming it is new) satisfies the applicant's present
burden to show, by clear and convincing evidence, that he did not commit the offense. At
best, it would give a jury pause in deciding whether to credit the eyewitness testimony at trial
from which it can strongly be inferred that the applicant did commit the offense. In my view,
it neither satisfies the threshold showing of "affirmative evidence of innocence," nor does
it ultimately convince me by clear and convincing evidence, were I to go on to balance the
"new" evidence against the "old," that no rational jury would have opted to credit the
eyewitness testimony anyway and convicted the applicant accordingly. All three of the
eyewitnesses knew the applicant; they were not purporting to identify a stranger. Two of
them also recognized what they knew to be his distinctive car at the scene, and one saw him
leave in it. I might be willing to say on the basis of the applicant's new evidence that, by a
preponderance of the evidence, no rational jury would have convicted the applicant; and, if
so, I would be willing to reach other federal constitutional claims he might raise in a
subsequent writ. (10) But I cannot accept the convicting court's recommendation that we grant
the applicant relief on his freestanding actual innocence claim; I agree with the Court that he
has not even presented "affirmative evidence of innocence," much less satisfied the
admittedly--but appropriately--"Herculean" burden to demonstrate by clear and convincing
evidence that no rational jury would have convicted him in light of his new evidence.

 We filed and set this case for submission because the issue of actual innocence is at
least sufficiently close that the convicting court recommended that relief be granted. Upon
careful and mature consideration (which inevitably takes time), the Court has properly
rejected that recommendation as inconsistent with the applicable legal standard. With these
added remarks, I join the Court's opinion.


FILED: April 20, 2011

PUBLISH
1. In the context of post-conviction habeas corpus, the convicting court is the "original"
factfinder, and we ordinarily pay great deference to that court's findings of fact and conclusions of
law when supported by the record. But that deference is not boundless, and we do not simply
rubber-stamp the convicting court's recommendations. This Court is the "ultimate" factfinder, with
the prerogative to reject the convicting court's recommendations on those rare occasions when we
deem it appropriate, even when they are supported by the record, if we think another disposition is
manifestly better supported by the record. Ex parte Reed, 271 S.W.3d 698, 727-28 & n.22 (Tex.
Crim. App. 2008).
2. The case was actually submitted to this Court and has been pending written decision only
since April 14, 2010.
3. See, e.g., Jennifer S. Forsyth & Leslie Eaton, The Exonerator: The Dallas D.A. is Reviewing
Old Cases, Freeing Prisoners--and Riling His Peers, Wall St. J., Nov. 15, 2008.
4. See Glenn A Garber & Angharad Vaughan, Actual-Innocence Policy, Non-DNA Innocence
Claims, 239 N. Y. L. J. 65, Apr. 4, 2008 ("The high courts of five states [including Texas] have
adopted some form of freestanding actual innocence" claim).
5. Ex parte Brown, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006).
6. 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).
7. 72 S.W.3d 671, 677 (Tex. Crim. App. 2002).
8. Id. at 678; see also Ex parte Brown, supra, at 546 ("the applicant must make a claim that,
if true, establishes affirmative evidence of his innocence. Then, at the hearing, the trial judge
assesses the witnesses' credibility, examines the 'newly discovered evidence,' and determines
whether that 'new' evidence, when balanced against the 'old' inculpatory evidence, unquestionably
establishes the applicant's innocence."); Ex parte Thompson, 153 S.W.3d 416, 427 (Tex. Crim.
App. 2005) (Cochran, J., concurring) (in assessing bare innocence claim, convicting court must
determine whether the applicant's proffer of new evidence "by itself unquestionably establishes [his]
innocence" before proceeding to inquire whether, balancing the new evidence with the old,
inculpatory evidence, no rational jury would convict).
9. The convicting court concluded that "there remains no evidence of [the applicant's] guilt[,]"
at least in part, because the snitch's trial testimony was "inadmissible hearsay." See Majority
opinion, at 10. Even assuming that the applicant's confession to the snitch would not fall under the
hearsay exception for statements against interest, Tex R. Evid. 803(24), or that it would even
constitute hearsay at all, Tex. R. Evid. 801(e)(2)(A), the applicant did not make a hearsay objection
at trial, and inadmissible-but-unobjected-to hearsay has probative value under Tex. R. Evid. 802.
10. See Tex. Code Crim. Proc. art. 11.07, § 4(a)(2), essentially codifying Schlup v. Delo, 513
U.S. 298 (1995), for purposes of our own abuse-of-the-writ doctrine with respect to subsequent state
post-conviction writs of habeas corpus in non-capital felony cases.